UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | | |
|---|---|---|---|
| MARCIA RHODES, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 1:07-CV-251 | |
| | ) | *Edgar / Lee* | |
| MOTION INDUSTRIES, INC., *et al.*, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM and ORDER

### I.    Introduction

Before the Court is the motion to compel and for sanctions filed by Defendant Motion

Industries, Inc. ("Motion") to require Plaintiff Marcia Rhodes to respond to questions relating to

childhood sexual abuse which Plaintiff refused to answer during her deposition and an Independent

Medical Examination ("IME") [Doc. 39].  Motion also requests an award of sanctions pursuant to

Fed. R. Civ. P. 30 and 37 [*id.*].  Defendant Charlie Meurisse ("Meurisse") has filed a response

joining in the motion [Doc. 60].  Plaintiff opposes the motion asserting she should not have to

respond to Defendants' questions concerning sexual abuse suffered as a teenager some 33 years ago

[Doc. 54 & 64].  A hearing on the motion to compel was held on October 14, 2008.  Present at the

hearing were: (1) attorney James M. Wooten for Plaintiff, (2) attorney Patricia E. Simon for Motion

and (3) attorney Fred T. Hanzelik for Meurisse.

### II.    Background

Plaintiff commenced this action on October 22, 2007 [Doc. 1].  On April 21, 2008, Plaintiff's

motion for leave to amend her complaint pursuant to Fed. R. Civ. P. 15 [Doc. 21] was granted and

Plaintiff filed her amended complaint on April 29, 2008 [Doc. 23].  In her amended complaint,

Plaintiff asserted claims against Defendants for: sexual harassment which created a hostile work

environment (Count I); *quid pro quo* sexual harassment (Count II); invasion of privacy (Count III); assault and battery (Count IV); extreme and outrageous conduct (Count V); intentional infliction of emotional distress (Court VI); vicarious liability/*respondeat superior* (Count VI); negligent training and supervision (Count VIII), and reckless/wanton training and supervision (Count IX) [Doc. 23 at 6-13].

Attached to Motion's motion to compel is the affidavit of attorney Patricia E. Simon ("Simon's affidavit") [Doc. 41 at 1-2 , 42 at 1-2]. Simon's affidavit states, in pertinent part:

> In the course of discovery in this case, Defendant received documents from a psychologist, Mark Womack, Ph. D., whom Plaintiff visited on two occasions in August and October of 2007 (*See* Womack records, attached hereto as Exhibit A.) Contained in the records received from Dr. Womack's office was also a Patient Information Form, partially completed by Plaintiff, on which she detailed that she had a history of "sexual abuse." *Id.*
>
> Plaintiff's deposition was conducted on August 20, 2008 and concluded on August 29, 2008. During this deposition, Plaintiff was asked various questions with regard to this sexual abuse and, at the instruction of her counsel, refused to answer nearly every question (See relevant excerpts from Plaintiff's deposition (Volume I – taken on August 20, 2008; and Volume II – taken on August 29, 2008), attached hereto as Exhibit B.).

*Id.* at ¶¶ 4-5.

The patient information form, which is attached to Simon's affidavit [Doc. 41 at 4-8], shows Plaintiff placed a checkmark on page three of the five page information form indicating she had suffered from sexual abuse [*id.* at 6]. No other reference to Plaintiff's past sexual abuse appears either in the information form or Dr. Womack's treatment notes, which are also attached to Simon's affidavit [*id.* at 4-12]. Portions of the transcript of Plaintiff's deposition, which are attached to Simon's affidavit as Exhibit B [Doc. 42 at 4-34, 35-38] show Plaintiff answered some general

2

questions about her childhood sexual abuse [*id.* at 5-6, 12-13, 15-18], but declined to answer others, and did not provide specific testimony concerning the abuse [*id.* at 35-36]. A portion of Plaintiff's deposition transcript and the form Plaintiff completed for Dr. Womack are also attached to Plaintiff's response to the motion [Doc. 54-2].

Attached to Plaintiff's supplemental response are portions of the transcript of the deposition of her treating psychologist, Mark A. Womack, Ph. D. [Doc. 64-2]. Dr. Womack stated Plaintiff had disclosed to him that she had suffered sexual abuse [*id.* at 2, Deposition at 65]. However, he indicated Plaintiff had not told him she had a history of sexual abuse as a child, but that such information would have been relevant to him [*id.* at 3, Deposition at 66]. During the hearing, Motion offered a portion of the transcript of Dr. Womack's deposition in which he explained that Plaintiff never informed him she had been sexually abused as a child, although she alluded to it [Deposition at 102-03]. Dr. Womack stated that when he asked Plaintiff if she had a history of prior sexual abuse, "she would not discuss that, but I couldn't get her to deny it. In other words, that was a door that she would not go down." [*Id.* at 103]. Dr. Womack then again stated that knowing Plaintiff had a history of prior sexual abuse would have been relevant to his diagnosis of her [*Id.* at 103-04].

Also attached to Plaintiff's supplemental response is Motion's expert witness disclosure concerning Alan D. Blotcky, Ph.D., who performed an IME of Plaintiff [Doc. 64-3]. In his expert, report, Dr. Blotcky stated, in relevant part:

> [Plaintiff] stated to me that she was subjected to sexual abuse at age 13. However, she refused to talk about that abuse. She became visibly agitated and would not reveal the name of the perpetrator or the circumstances surrounding the abuse. [Plaintiff] stated that she did not receive mental health treatment following that abuse.

[*Id.* at 6]. In the summary of his report, Dr. Blotcky stated:

> In my opinion, it is likely that [Plaintiff] has been struggling with depression and anxiety for many years, dating back to her sexual abuse at age 13. . . .
>
> I believe that [Plaintiff's] prior sexual abuse has left her prone to relate to men in a sexualized manner. . . [Plaintiff] did not seem to be terribly offended by . . . Meurisse's comments, phone calls, and emails. In fact, she admits that she called him once or twice herself. [Plaintiff] reports that . . . Meurisse never made a threat to her. . . She does not describe a hostile environment at work. She did not report the harassment to any supervisor or authority at [Motion].

[*Id.* at 7-8]. In his recommendation, Dr. Blotcky stated: "Again, in my opinion, [Plaintiff] has been struggling with depression and anxiety for many years, dating back to her sexual abuse at age 13."

[*Id.* at 8].

## III.   Analysis

Motion asserts Plaintiff should be compelled to answer questions concerning "when the sexual abuse occurred . . . , who committed the sexual abuse, for how long the abuse continued, and whether the abuse caused her any emotional distress." [Doc. 40 at 12]. Motion asserts Plaintiff's refusal to answer these questions was improper and prejudiced its ability to defend her claims against it, particularly her claims for intentional infliction of emotional distress and extreme and outrageous conduct [*id.*]. Motion further asserts that Plaintiff's refusal to answer questions about her childhood sexual abuse – other than disclosing it occurred – during her IME was prejudicial to Motion [*id.* at 14]. Meurisse joins in Motion's motions and arguments [Doc. 60 at 1-2].

In her response, Plaintiff asserts Defendants are not entitled to question her concerning sex abuse which occurred 33 years ago and which is not in any way related to the claims brought in this action [Doc. 54 at 2]. Plaintiff asserts Defendants seek to take "advantage of a horrendous event in

4

Plaintiff's childhood, that occurred over 33 years ago. This line of questioning is . . . annoying, embarrassing, and oppressive . . . ." [*Id.* at 3]. Plaintiff further asserts Defendants cannot overcome the bar of Fed. R. Evid. 412 because she testified she never sought nor received psychological or psychiatric treatment as a child and Defendants have received all of Plaintiff's records concerning psychological treatment she received [*id.* at 4].

### A.    Standard

Both Fed. R. Civ. P. 26, which controls the scope of discovery, and Fed. R. Evid. 412 impact the parties' current dispute. *A.W. v. I.B. Corp.*, 224 F.R.D. 20, 23 (D. Me. 2004). Namely:

> While Federal Rule of Civil Procedure 26 controls, Federal Rule of Evidence 412 (the so-called "Rape Shield" law, *see S.M. v. J.K.*, 262 F.3d 914, 918 (9th Cir.2001), *amended by* 315 F.3d 1058 (9th Cir.2003)) also informs the instant dispute over the boundaries of proper inquiry into an alleged sexual-harassment victim's sexual conduct and history. *See, e.g.,* Fed. R. Evid. 412 Advisory Committee notes to 1994 amendments (although discovery of victim's past sexual conduct or predisposition in civil cases continues to be governed by Fed. R. Civ. P. 26, "[i]n order not to undermine the rationale of Rule 412 . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-workplace conduct will usually be irrelevant."); *Gibbons v. Food Lion, Inc.*, No. 98-1197-CIV-T-23F, 1999 WL 33226474 (M.D.Fla. Feb. 19, 1999), at * 2 (aligning with majority view that, for policy reasons, Rule 412 informs discovery decisionmaking).

*Id.*

Although Rule 412 does not explicitly apply to discovery, it is "applicable and has

significance in deciding" certain discovery motions; namely, in deciding a discovery motion a court must be careful it does not undermine the rationale of the rule. *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 626-27 (D. Kan. 1999). The advisory committee notes to Rule 412 state:

> The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.
>
> Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence of [sic] for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim.

*Id.* (citing Fed. R. Evid. 412 advisory committee notes (1994 amend.)).

The Eighth Circuit has noted it "previously applied Rule 412 in the context of child abuse cases." *United States v. Azure*, 845 F.2d 1503, 1506 (8th Cir. 1988). Thus, pursuant to the rational of Rule 412, "[i]n a civil case, 'otherwise admissible' evidence may only be introduced if the proponent can show that 'its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party.' Rule 412(b)(2) (reversing the usual presumption of admissibility set forth in Fed. R. Evid. 403)." *Wolak v. Spucci*, 217 F.3d 157, 160 (2nd Cir. 2000). Rule 412 "which explicitly includes civil cases involving sexual misconduct, encompasses sexual harassment lawsuits." *Id.* The Rule 412 civil case balancing test:

> differs in three respects from the general rule governing admissibility set forth in Rule 403. First, it Reverses [sic] the usual procedure spelled out in Rule 403 by shifting the burden to the proponent to

6

demonstrate admissibility rather than making the opponent justify exclusion of the evidence. Second, the standard expressed in subdivision (b)(2) is more stringent than in the original rule; it raises the threshold for admission by requiring that the probative value of the evidence *substantially* outweigh the specified dangers. Finally, the Rule 412 test puts 'harm to the victim' on the scale in addition to prejudice to the parties."

*A.W.*, 224 F.R.D. at 24 (emphasis in original). Rule 412:

including its burden-shifting component, has been imported into the discovery context. *See, e.g., Barta v. City & County of Honolulu*, 169 F.R.D. 132, 135 (D.Haw.1996) ("Although Rule 412 is a rule controlling the admissibility of evidence rather than its discoverability, Rule 412 must inform the proper scope of discovery in this case. . . . In recognition of the policy rationale for Rule 412, the court must impose certain restrictions on discovery to preclude inquiry into areas which will clearly fail to satisfy the balancing test of Rule 412(b)(2), although the trial judge will render the decisions on what evidence is ultimately admitted.").

*Id.*

"In order not to undermine the rationale of Rule 412 . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquires and to ensure confidentiality." *Hertenstein*, 189 F.R.D. at 620. "Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant." *Id.*

## B. Additional Responses Shall Be Required

In *McCleland v. Montgomery Ward & Co., Inc.*, No. 95 C 23, 1995 WL 571324 (N.D. Ill. Sept. 25, 1995), the defendant discovered during the plaintiffs' depositions that they were each

abused as children and it subsequently obtained their medical records. *Id.*, 1995 WL 571324 at * 2. The plaintiffs were not claiming aggravation of a pre-existing mental condition, but were seeking compensatory damages for humiliation and emotional suffering from the defendant's alleged conduct [*id.*]. The district court denied plaintiffs' motion in *limine* to exclude the evidence of their childhood and adolescent abuse [*id.* at * 1]. The district court noted that the plaintiffs conceded that in seeking compensatory damages for emotional distress and suffering they must prove such damages were caused by the defendant's conduct [*id.* at * 2]. The district court also noted that defendant could avoid liability for compensatory damages for emotional distress and suffering by showing that the plaintiffs' emotional distress was caused by something other than the defendant's actions [*id.*]. Consequently, the district court found the probative value of the evidence concerning the plaintiffs' childhood and adolescent sexual abuse was not substantially outweighed by the danger of unfair prejudice [*id.*].

Likewise in *Delaney v. City of Hampton*, 999 F. Supp. 794 (E.D. Va. 1997), *aff'd*, 135 F.3d 769 (4th Cir. 1998), the defendant sought admission of evidence regarding the plaintiff's sexual history under Rule 412. *Id.*, 999 F. Supp. at 796. Specifically, the defendant sought to admit evidence regarding the plaintiff's "history of prior sexual abuse to show that other stressors in her life besides the alleged abuse by [the plaintiff] might be responsible for her psychiatric condition." *Id.* The district court found that under Rule 412, the probative value of such evidence substantially outweighed the danger of harm to any victim and of unfair prejudice to any party because the evidence was "highly probative as to both liability and damages." *Id.*

Additionally and specifically with regard to the IME, in *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649 (D. Kan. 2003), the plaintiff brought an action against the defendant, asserting *inter*

*alia* claims of sexual harassment, assault and battery, and intentional infliction of emotional distress. *Id.* at 650. The defendant sought an order of the court directing plaintiff to submit to an IME pursuant to Fed. R. Civ. P. 35 [*id.*]. The plaintiff moved that the court prohibit the IME from asking about plaintiff's non-work sexual activities and sexual matters between plaintiff and her co-employees. *Id.* at 654. The court refused the plaintiff's request to limit the scope of the IME, stating:

> This is a sexual harassment case. Plaintiff asserts that the conduct of defendants has caused her current mental state and several specific injuries. To validly assess her mental state and her injuries, the examiner must have leave to make relevant inquiries. As Judge Rushfelt of this district has noted, "[t]o prohibit inquiry into private sexual activities may unreasonably restrict exploring the history of plaintiff relevant to this case." *See Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620 (D.Kan.1999) (permitting examiner to inquire about private sexual activities in sexual harassment case and concluding that such inquiry did not run afoul of Federal Rule of Evidence 412 because such inquiries were relevant to the evaluation of the cause and extent of psychological injuries claimed by plaintiff). The court assumes that [the IME doctor] will exercise sound professional discretion in making such inquiries and will not pursue private information that is wholly unrelated to plaintiff's claims of injury and emotional distress. Finally, any concerns about plaintiff's privacy interests in this regard will be addressed by limiting the disclosure of the results of plaintiff's examination, including any test results, to the attorneys and experts in this case until further court order.

*Id.*

In addition to claims of sexual harassment, Plaintiff has asserted claims of extreme and outrageous conduct and intentional infliction of emotional distress against Defendants. Plaintiff has alleged that as a result of the Defendants' conduct, she has "suffered severe anxiety, depression, post-traumatic stress and paranoia to the extent that these conditions have affected her physical health and well-being." [Doc. 23 at 6, ¶ 21]. Given the claims asserted by Plaintiff, the probative

value of the evidence/testimony Defendants seek from Plaintiff substantially outweighs the specified dangers addressed by Rule 412. This is particularly true in this instance given the positions of Dr. Blotcky and Dr. Womack, Plaintiff's expert, that her prior sexual abuse would be relevant to their diagnosis of her condition. Based upon the record and arguments of the parties, Defendants have met their burden of showing the evidence they seek is discoverable.[1]

Accordingly, the aspect of the motion to compel which seeks to compel Plaintiff to respond to questions posed concerning her past sexual abuse in her deposition and as part of the IME is **GRANTED** as follows: Plaintiff is to respond to the questions she refused to answer in her deposition and to reasonable follow-up questions concerning her childhood sexual abuse. However, to minimize any negative impact or potential for abuse, it is **ORDERED** that Plaintiff may respond to written questions concerning her childhood sexual abuse pursuant to Fed. R. Civ. P. 31 under the following schedule and terms:

(1)     On or before **October 17, 2008**, Motion is to submit its written questions concerning childhood sexual abuse to Plaintiff;

(2)     Plaintiff is to submit her written responses to Motion's questions on or before **October 21, 2008**;

(3)     Motion is to submit Plaintiff's written responses to Dr. Blotcky and, on or before October 31, 2008, Dr. Blotcky is to review Plaintiff's written responses and, in the event he determines additional information/responses are needed for his expert report, Motion shall submit the additional written questions posed by Dr. Blotcky to Plaintiff on or before **October 31, 2008**;

---

[1] While the specified information is discoverable under the terms set forth herein, the issue of admissibility of any such evidence is not before the undersigned and is not addressed in the instant memorandum and order. The issue of admissibility will be determined by the Court at the trial of this matter.

10

(4) Plaintiff is to submit her written responses to Dr. Blotcky's additional questions, if any, on or before **November 10, 2008**; and

(5) In the event Motion contends further examination by Dr. Blotcky is necessary or a dispute arises regarding whether Plaintiff should respond to or has fully responded to any of the questions posed, the parties are encouraged to take appropriate action to facilitate a prompt resolution of such disputes as discussed during the hearing.

It is further **ORDERED** that given the personal and sensitive nature of this mater, Plaintiff's responses shall be subject to the following restrictions:

(1) Plaintiff's responses concerning childhood sexual abuse shallnot be used for any purpose other than this litigation;

(2) None of the Plaintiff's responses concerning childhood sexual abuse shall be given, shown, made available or communicated in any way to anyone other than counsel of record for the parties and their staff, the expert witnesses, and the Court pending further order of the Court;

(3) It is the responsibility of counsel in this litigation to maintain all of the Plaintiff's responses concerning childhood sexual abuse in a secure and appropriate manner so as to allow access to such responses by only the persons permitted access by this order; and

(4) To the extent that Plaintiff's responses to questions concerning childhood sexual abuse or portions of such response are contained in, quoted in, or attached to any materials filed with the Court, such material **SHALL BE** filed under seal.

Finally, it is **ORDERED** that the deadline for Motion's expert witness disclosures set forth in this Court's scheduling order of January 22, 2008 [Doc. 16] **SHALL BE** extended up to and including **Monday, December 1, 2008**, solely for the purpose of permitting Motion's expert, Dr. Blotcky, to supplement his expert report, if necessary, in light of Plaintiff's responses concerning

11

her childhood sexual abuse.

### C. Request for Sanctions

As noted, Motion also seeks an award of sanctions pursuant to Fed. R. Civ. P. 30 and 37 [Doc. 39 & 40]. Specifically, Motion requests an award of expenses, including attorneys fees, incurred in connection with the motion to compel as well as any costs associated with reopening Plaintiff's deposition and the IME exam [Doc. 40 at 17]. Plaintiff responds that neither she nor her counsel should be sanctioned for her refusal to respond to questions concerning her childhood sexual abuse during her deposition and IME because the Court made no conclusive ruling, during its brief telephone conference with counsel for the parties, as to whether she should respond to the questions concerning the aforementioned sexual abuse and, therefore, she has not violated or disobeyed any order of the Court [Doc. 54 at 5].

Under Fed. R. Civ. P. 37(b)(2), a court may enter such orders as are just with regard to a party's failure to obey an order to provide or permit discovery, including an order compelling discovery under Rule 37(a). *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153 (6th Cir. 1988). In addition, a court "may impose appropriate sanctions, including the costs and attorney's fees incurred by the parties, if a finding is made 'that any impediment, delay or other conduct has frustrated the fair examination of the deponent.'" *Veritas-Scalable Inv. Products Fund, LLC v. FB Foods, Inc.*, No. 3:04CV199(JBA), 2006 WL 1102757, * 4 (D.Conn. Apr. 25, 2006) (quoting Fed. R. Civ. P. 30(d)(3)).

Plaintiff did not refuse to participate in her deposition or the IME. Rather, during the deposition, after contacting the Court concerning the parties' discovery dispute, and during the IME, Plaintiff only declined to response to some questions concerning the disputed topic. Based upon the

pleadings and the arguments of the parties, the Court finds the conduct of Plaintiff (and her counsel) does not warrant the imposition of sanctions or an award of attorney's fees and costs.

Accordingly, the aspect of Motion's motion which seeks sanctions against Plaintiff and/or her counsel is **DENIED**.

## IV.    Conclusion

For the reasons stated herein, the Motion to compel and for sanctions [Doc. 39] is

**GRANTED IN PART and DENIED IN PART** as follows:

(1)    The aspect of the motion which seeks sanctions against Plaintiff and/or her counsel is **DENIED**;

(2)    The aspect of the motion which seeks responses to questions concerning Plaintiff's childhood sexual abuse is **GRANTED** and Plaintiff is to respond to written questions concerning her childhood sexual abuse under the terms and conditions established herein, including the terms and conditions regarding maintaining confidentiality and sealing; and

(3)    The deadline for Motion's expert witness disclosures set forth in this Court's scheduling order of January 22, 2008 is extended to **December 1, 2008**, solely for the purpose of permitting Motion's expert, Dr. Blotcky, to supplement his expert report in light of the responses ordered herein.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

13